FILED
GREAT FALLS DIV.

'06 JUL 18 AM 11 50

PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| DONALD S. CAPE, | Cause No. CV 03-03-GF-CSO |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| CORRECTIONS CORPORATION OF AMERICA, INC.; JAMES MacDONALD; WILLIAM BOOTHE; K. CRANE; TIM HAWKE; BEST FOODS, INC.; ARAMARK INC.; K. KINYON; Ms. MENGE; Ms. STEVENSON; J.R. WEISNER; and DEFENDANTS JOHN DOW 1 through 10, sued in their individual and official capacities, | (Hawke Defendants' Motion for Summary Judgment) |
| Defendants. | |

On May 5, 2006, Defendants Hawke, Best Foods, Inc., and Aramark Correctional Services, Inc. (collectively, "Defendants" or "the Hawke Defendants") filed a motion for summary judgment based on the Rooker-Feldman doctrine, the doctrines of res judicata and collateral estoppel, failure to state a claim, and mootness. The motion was accompanied by a brief and a statement of uncontroverted

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

facts ("SUF").[1]  Although Cape was released from custody on or about June 1, 2005, Defendants also provided a notice and warning pursuant to Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998) (en banc), and D. Mont. L.R. 56.2.

Cape responded to the motion on May 30, 2006, by filing a response brief and a statement of genuine issues ("SGI"). Defendants filed a reply on June 7, 2006.  On June 22, 2006, Cape filed a "Response to New Issues" and two affidavits.

## I. Summary Judgment Standards

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56[©].  A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

_____

[1]  The last two pages of Part 2 of Exhibit H-1 consist of a copy of a "Petition for Writ of Mandamus" filed in the Montana Supreme Court by Eldon Huffine on April 17, 2003.  The Court does not believe that document plays any role in this case.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. Id.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe the pleadings liberally and to afford the pro se litigant the benefit of any doubt.    Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

## II. Cape's Complaint in This Court

The "Amended and Supplemental Complaint," filed on July 1, 2005 ("Amended Complaint" or "Am. Compl.") (Court's doc. 84), and
FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

the "Supplement to the Amended and Supplemental Complaint" ("Supp. Am. Compl.") (Court's doc. 85), filed on July 20, 2005, are the governing pleadings.[2] The latter Supplement adds jurisdictional allegations, viz., that the burdens on religious exercise of which Cape complains either were imposed in a program or activity that receives federal financial assistance or affect commerce among the States or nations or with Indian tribes. See Supp. Am. Compl. at 2, ¶ 2; Am. Compl. at 2, ¶ 2; 42 U.S.C. § 2000cc-1(b).

As to the Hawke Defendants, Cape's Amended Complaint alleges that he was a "practicing, traditional, Roman Catholic," Am. Compl. at 6, ¶ 34, while he was incarcerated at Crossroads Correctional Center in Shelby, Montana, beginning in January, 2000. Crossroads is owned by the Corrections Corporation of America ("CCA") and contracts with the Montana Department of Corrections to house Montana prisoners. Cape contends that the Hawke Defendants violated and conspired to violate his rights under the First, Fourth, and Fourteenth Amendments and under the prisoner provisions of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1. See Am. Compl. at 1-2; id. at 24 ¶ A.1.

Cape alleges that Hawke, a former employee of Best Foods and

---

[2] Although a plaintiff generally may not rely on the allegations of his complaint to meet a motion for summary judgment, the grounds for dismissal set forth in Defendants' motion depend on the nature of the allegations in the pleading.

current employee of Aramark, was the Food Service Director at Crossroads and was responsible for preparing meals for inmates on special diets.  During the time frame of the Amended Complaint, on November 1, 2001, Aramark succeeded to Best Foods' contract to provide meals for inmates at Crossroads.  See id. at 3-4, ¶ 9; id. at 4, ¶¶ 12-13; id. at 5-6, ¶¶ 22-26; Defs.' SUF Ex. H-3 at 2, ¶ 2. Cape contends that Hawke "personally ordered that fish would not be served to Plaintiff and other Catholics on Fridays, when it was readily available and prepared to serve to inmates receiving special or religious diets."  Id. at 9, ¶ 50; see also id. ¶ 51. He also contends that Best Foods and Aramark knew or should have known of Hawke's failure to comply with the demands of his religious diet.  Id. at 9-11, ¶¶ 52-56; id. at 11, ¶ 58.

Cape explains that he requested "a religious diet for all Fridays throughout the year consisting of no meat items or items made from meat, and fish for lunch and dinner."  Id. at 14, ¶ 82. He asserts that consuming fish is the traditional way of "observ[ing] the penitentiary obligation of Catholics," id. ¶ 85, but that the Hawke Defendants nonetheless refused to honor his requests for meatless meals, both at Crossroads and, after Cape was transferred, at the Great Falls Regional Prison. See generally id. at 14-16, ¶¶ 81-98; id. at 17-19, ¶¶ 110-120.  Cape also avers that Hawke conspired with Defendants MacDonald, Boothe, and Weisner to deprive him of his right to a religious diet. See id. at 21-22, ¶¶

133-136. He contends that he "was denied the ability to consume food without violating his religious beliefs, subjecting him to days and weeks without food." Id. at 22-23, ¶ 142.

For his relief, Cape seeks declaratory and injunctive relief, compensatory and punitive damages, costs, and other relief to which he may be entitled. Id. at 24-25, ¶¶ A-F.

## III. **Rooker-Feldman Doctrine**

The Hawke Defendants assert that "Cape cannot avoid the preclusion of the state courts decisions under *28 U.S.C. § 1728* [sic] and the doctrines of *res judicata* and collateral estoppel without claiming he was injured by the state court decisions themselves." Defs.' Mem. in Supp. of Mot. for Summary Judgment ("Defs.' Mem.") (Court's doc. 123) at 3. A review of the Amended Complaint shows that Cape does not allege injury as a result of the state courts' decisions. Defendants are not entitled to summary judgment on the basis of Rooker-Feldman.

## IV. **Res Judicata and Collateral Estoppel**

The Hawke Defendants "adopt and incorporate" the Crossroads Defendants' arguments that Cape's Amended Complaint should be dismissed on grounds of res judicata or collateral estoppel. The Crossroads Defendants[3] relied on the Montana Supreme Court's decision affirming dismissal of Cape's Amended Complaint filed in

---

[3] The "Crossroads Defendants" are Corrections Corporation of America, MacDonald, Boothe, Crane, Kinyon, Menge, Stevenson, and Weisner.

Montana's Ninth Judicial District Court on or about February 5, 2001. See Crossroads Defs.' Statement of Uncontroverted Facts ("Crossroads SUF") (Court's doc. 103) Ex. E (Am. Compl., Cape v. Crossroads Correctional Center, et al., No. DV 00-030 (Mont. 9th Jud. Dist. no date) ("State Am. Compl.")); id. Ex. L (Order, Cape v. Crossroads Correctional Center, No. 03-172 (Mont. Sept. 21, 2004) ("Mont. Order").

28 U.S.C. § 1738 requires the federal courts to give preclusive effect to a State's judgments "whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980); see also Manufactured Home Communities, Inc. v. City of San Jose, 420 F.3d 1022, 1031 (9th Cir. 2005) ("To determine the preclusive effect of a state court judgment federal courts look to state law." ) (internal quotations, citations, and brackets omitted). Doctrines of preclusion apply in § 1983 actions, as well as other actions based on federal law, to the same extent they apply in any other case. Allen, 449 U.S. at 97-98; see also Spoklie v. Montana, 411 F.3d 1051, 1055-56 (9th Cir. 2005) (applying Montana law in determining the preclusive effect of a Montana judgment on federal constitutional issues).

## A. Claims and Decisions in the State Courts

Count 1 of Cape's Amended Complaint in the state court alleged that Defendants Crossroads Correctional Center, Crossroads Corporation of America, James MacDonald, William Boothe, Best

Foods, Inc., and Tim Hawke violated his rights under the First
Amendment "by failing to provide him with 'religious meals' during
Lent and den[ying] him the ability to observe Lent by eating fish
and unleavened bread on Ash Wednesday and Fridays during Lent."
Mont. Order at 2-3; see also State Am. Compl. at 4.   The relief
section of Cape's Amended Complaint included a request for
injunctive relief to compel the Defendants to provide religious
meals "consistent with the Law of Abstinence, tradition, customs of
the Catholic Church and the Plaintiff's religious belief(s)" or
with the "Law of Abstinence [and] Law of Fasting."   State Am.
Compl. at 7, ¶ 2(a), (b).

The trial court dismissed Count 1 of Cape's Amended Complaint
on the grounds that it failed to state a claim on which relief
might be granted.   The court said that "the pleadings of Plaintiff
clearly indicate the requirement of the Catholic religion during
these periods is that of *abstinence*, not consumption."   Crossroads
SUF Ex. G at 2 (Am. Order Granting in Part and Denying in Part
Motion to Dismiss, Cape, No. DV 00-030 (Mont. 9th Jud. Dist. May
31, 2001)) (emphasis in original).

On appeal, Cape argued that the trial court had set itself up
as the arbiter of the correctness of his religious beliefs.   See
Mont. Order at 5-6, ¶ 15.   The Montana Supreme Court held that
"Cape failed to allege that his dietary requests of fish and
unleavened bread are essential requirements of a Catholic's diet

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

during Lent." Mont. Order at 7, ¶ 21. The court also relied on affidavits filed by Defendants in connection with a motion for summary judgment on the other counts of Cape's State Amended Complaint, holding that "Cape has offered no evidence to contradict" the statements of Warden MacDonald or Father Herbert Joseph Pins, id., who averred that "the Catholic religion does not require fish to be consumed on days of abstinence from red meat," that a vegetarian diet is acceptable, and that Catholics are not required to eat unleavened bread during Lent. Id. at 6-7, ¶¶ 18-19.[4]

The remaining counts of Cape's Amended Complaint alleged, among other things, conspiracy. See State Am. Compl. at 6 ("Cause IV").[5] The trial court dismissed the conspiracy count with prejudice on the ground that it became moot when Cape was

---

[4] The Hawke Defendants phrase the resolution of Cape's State Amended Complaint as a determination that Cape "is not entitled to a religious diet." Defs.' Mem. at 5 (referring to Mont. Order at 8, ¶ 22); see also id. at 16. That is inaccurate. Cape remains as entitled to a religious diet as any other inmate; litigation cannot take that right away from him. The Montana Supreme Court actually held that Cape's right to a religious diet was not violated: "the District Court was correct in dismissing Cape's claims that Respondents violated his right to freedom of religion by denying him 'religious meals.'" Mont. Order at 8, ¶ 22.

[5] Cause V, see State Am. Compl. at 7, alleged violation of 42 U.S.C. § 1983. Section 1983 is the sole federal vehicle for a plaintiff alleging that his constitutional rights were violated by persons acting under color of state law. As Cape pled Cause V, it incorporated Causes I through IV. Id. Presumably, the Montana Supreme Court considered Cape to have pled a state-law cause of action for violation of his federal constitutional rights, since it addressed the § 1983 claim as if it was separate from the constitutional claims. See Mont. Order at 2, ¶¶ 3-4; 13, ¶ 33. Regardless, since the court held that Cape had no claim under § 1983, and since Cape incorporated Causes I through IV, the Montana Supreme Court effectively decided all of Cape's § 1983 claims. Cause V is omitted from all further discussion as redundant.

transferred out of Crossroads because he "will not return."
Crossroads SUF Ex. K at 2 (Cape, No. DV 00-030 (Mont. Jan. 23, 2003)).

The Montana Supreme Court held that the basis for the trial court's dismissal was erroneous.  Mont. Order at 9, ¶ 26. Nonetheless, the Montana Supreme Court affirmed the dismissal, finding instead that Cape's conspiracy claims were "bare, unsupported, conclusory allegations," id. at 11, ¶ 30, insufficient to withstand a motion for summary judgment.

### B. Res Judicata

#### 1. Montana Law

Both res judicata and collateral estoppel are "based on a judicial policy favoring a definite end to litigation."  Stanley and Carolyn M. Watkins Trust v. Lacosta ("Watkins Trust"), 92 P.3d 620, 626 ¶ 26 (Mont. 2004).  "The doctrine of res judicata prevents a party from relitigating a matter that the party has already had an opportunity to litigate."  Federated Mut. Ins. Co. v. Anderson ("Anderson"), 991 P.2d 915, 936 ¶ 58 (Mont. 1999).  Res judicata applies if:

> (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and to the issues between them.

Watkins Trust, 92 P.3d at 626 ¶ 27.  Three additional elements are

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

added by other cases.  The court that entered the judgment relied upon must have been a court of competent jurisdiction, see Thornton v. Alpine Home Center, 38 P.3d 855, 858 ¶ 14 (Mont. 2001); the proceedings underlying the judgment must have been fundamentally fair, see Baltrusch v. Baltrusch, 130 P.3d 1267, 1274 ¶ 18 (Mont. 2006); and there must be a final judgment, see Hollister v. Forsythe, 918 P.2d 665, 667 (Mont. 1996).

Where it applies, "[t]he doctrine of res judicata bars not only issues that were actually litigated, but also those that *could have been* litigated in a prior proceeding."  In re Marriage of Kolczak, 97 P.3d 1091, 1093 ¶ 14 (Mont. 2004) (emphasis added) (citing Mills v. Lincoln County, 864 P.2d 1265, 1267 (Mont. 1993)). "A party should not be able to litigate a matter that the party already had the opportunity to litigate." Kolczak, 97 P.3d at 1094 ¶ 14 (citing Sheffield Ins. v. Lighthouse Properties, 828 P.2d 1369, 1371 (Mont. 1992)).  Where a litigant attempts to pursue a new cause of action on the basis of an event or occurrence that has already been litigated, he is barred by res judicata.  See Xu v. McLaughlin Research Inst. for Biomedical Science, 119 P.3d 100, 106 ¶ 35 (Mont. 2005) (applying res judicata to defamation claim against defendant-employer where plaintiff-employee had already litigated claims for wrongful discharge, Montana Human Rights Act violations, emotional distress, and negligence); Troutt v. Colorado Western Ins. Co., 246 F.3d 1150, 1156 (9th Cir. 2001) ("res

judicata not only bars claims litigated in a former action, but also claims that might have been litigated in the former action.") (citing <u>Balyeat Law, P.C. v. Hatch</u>, 942 P.2d 716, 717 (Mont. 1997)).

### 2. Application

#### (a) Parties or Their Privies

Defendants Hawke and Best Foods were named parties in Cape's Amended Complaint in state court. They meet the first prong of the res judicata test.

Aramark was not named as a party in the state action. It asserts that Cape named it as a party in this action "because it replaced Best Foods to provide the food services, and because it too employed Hawke." Defs. Mem. at 9 (citing Am. Compl. at 3, ¶ 9; 4, ¶ 12; and 5, ¶ 23). Cape responds that Aramark is not in privity with Best Foods because it took over the food services contract after the effective date of the RLUIPA and because Hawke left Best Foods and was hired by Aramark. <u>See</u> Pl.'s Resp. at 10-11 (referring to Defs.' SUF Ex. H-3 at 2, ¶ 2 (stating that Aramark assumed responsibility for food services at Crossroads on November 1, 2001)).[6]

The effective date of the RLUIPA has no bearing on the privity

---

[6]     A line is missing from the second page of Defs.' SUF Ex. H-3. Presumably Hawke entered Aramark's employ at the same time Aramark replaced Best Foods as the food service provider at Crossroads.   <u>See</u> <u>id</u>. at 2, ¶ 2.

analysis.  The question is whether Aramark's interest in the previous litigation is identical to that of Hawke or of Best Foods. Of course, every defendant has an interest in avoiding liability; if that were the test, every defendant would be in privity with every other defendant.  The nature of the interest must be more similar than that.  A shareholder in a closely-held corporation, for instance, has the same interest as the corporation.  See, e.g., Brault v. Smith, 679 P.2d 236 (Mont. 1984).  In some cases, the scope of privity is broadened to cover an employee who is sued for the same acts underlying a previous suit against his employer.  See DeLeon v. Slear, 616 A.2d 380 (Md. 1992).

Here, Defendants do not contend that there is any relationship between Aramark and Best Foods.  Therefore, there is no privity between them.  Additionally, for the reasons explained in the Findings and Recommendation on the Crossroads Defendants' Motion for Summary Judgment, Part III.B(2)(a), Aramark cannot be considered to be in privity with Hawke.  Although the Amended Complaint might be construed to contend, in part,[7] that Aramark is vicariously liable for Hawke's conduct, it is not, as a matter of law.  The Court cannot grant summary judgment on legally insupportable grounds.  Aramark is not entitled to summary judgment

---

[7]  As set forth below in Part V.D, the Court is required to read pro se pleadings liberally.  On a liberal standard, Cape alleges that Aramark knew of Hawke's decisions, knew the applicable law, and, by failing to rectify the situation, created a policy or custom of violating RLUIPA.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

on grounds of res judicata because it is not in privity with either Best Foods or Hawke.[8]

### (b) Subject-Matter

The subject-matter of this action is whether a religious diet was available to Cape at Crossroads Correctional Center and at Great Falls Regional Prison.  If Cape's allegations as to the two sites differed, the Court might find two subject-matters, but Cape's allegations are identical as to the two sites. Consequently, the subject-matters are the same.

### (c) Issues and Relation to Subject-Matter

The most important issue in deciding whether res judicata applies is whether the issues are the same and relate to the same subject matter.  Hollister, 918 P.2d at 667.

### (i) First Amendment Claim

The third prong of the res judicata test is met with respect to Cape's First Amendment claim against Defendants Hawke and Best Foods.  His claim in this Court is virtually identical to his claim in state court.

### (ii) RLUIPA Claim

The Montana Supreme Court expressed "no opinion in the instant

---

[8] It may be worth pointing out that, as a matter of logic, Entity A cannot be liable based on allegations that are identical to those made against Entity B and found insufficient to support liability.  But the question at hand is whether the logic comes from the doctrine of res judicata or from some other source.  It does not come from res judicata unless there is a close legal relationship between the two entities.

case about whether Cape's claims are cognizable under the RLUIPA" because "he did not bring his claim under the RLUIPA." Mont. Order at 12 n.1. Despite this, Defendants argue that the Montana Supreme Court's decision precludes Cape's RLUIPA claim. To the extent the other elements of res judicata are met, Defendants Hawke and Best Foods are correct, for the reasons set forth in the Findings and Recommendation on the Crossroads Defendants' Motion for Summary Judgment, Part III.B(2)(c)(ii).[9] Cape admits that Aramark took over from Best Foods after the enactment date of the RLUIPA. Pl.'s Resp. at 10-11. That means that Cape could have amended his pleading to allege a RLUIPA claim against Best Foods as well as Hawke.

### (d) Capacities

Hawke and Best Foods are named in the same capacity in this action as in the state-court action.

### 3. Conclusion

All the elements of res judicata are met with respect to all of Cape's claims against Defendants Hawke and Best Foods.[10] Aramark

---

[9]   42 U.S.C. § 2000cc-2(c) provides that "Adjudication of a claim of a violation of *section* 2000cc of this title in a non-Federal forum shall not be entitled to full faith and credit in a Federal court unless the claimant had a full and fair adjudication of that claim in the non-Federal forum" (emphasis added). Cape's RLUIPA claim is not brought under § 2000cc, which applies to land use regulations. It is brought, and only could be brought, under § 2000cc-1, which applies to institutionalized persons. Therefore, the Full Faith and Credit Act applies to Cape's RLUIPA claim.

[10]   Cape's conspiracy claims are dealt with in the Findings and Recommendation on the Crossroads Defendants' Motion for Summary Judgment, Part III.C(2)(b)(i), pages 25-26. Because neither Hawke nor Best Foods was named in

is not entitled to summary judgment on res judicata grounds.

## C. Collateral Estoppel

As Aramark is the only one of the Hawke Defendants left, the Court will, from this point forward, deal only with Cape's allegations against it.

### 1. Montana Law

Like res judicata, collateral estoppel can preclude a party from litigating certain matters. It applies, however, at the level of issues, rather than entire claims. It also prevents a party from relitigating certain fact questions that were decided in a previous action. See Anderson, 991 P.2d at 936 ¶ 59 (Mont. 1999) (internal citations and quotation marks omitted).

Collateral estoppel applies if (1) the same issue was raised and decided in the previous action, (2) there was a final judgment on the merits, and (3) the party against whom estoppel is asserted was a party or in privity with a party in the previous action. Estate of Watkins v. Hedman, Hileman & Lacosta, 91 P.3d 1264, 1272 (Mont. 2004).

### 2. Application

#### (a) Party or Privy and Final Judgment

These two elements are easily resolved. Cape is the party against whom collateral estoppel is asserted, so the party or privy

---

connection with the two remaining conspiracy claims, there are no remaining claims against them.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16

prong is met with respect to all claims against Aramark.  While the trial court did not reach the merits of all of Cape's claims, the Montana Supreme Court did.[11]  There was a final judgment on the merits.

### (b) Identity of Issues

> Identity of issues is the most crucial element of collateral estoppel.  In order to satisfy this element, the identical issue or 'precise question' must have been litigated in the previous action.  To determine whether the issue raised is identical, we compare the pleadings, evidence, and circumstances surrounding the two actions.

Fadness v. Cody, 951 P.2d 584, 588-89 (Mont. 1997).

### (i) Same Issue

Cape's claim in this case regarding the standards applied to non-Catholic inmates' religious diets as well as the claims regarding his diet on Ash Wednesday and on Fridays during Lent are identical to the claims he made in the state action.  Compare Am. Compl. at 9, ¶¶ 50-51; 14-15, ¶¶ 81-96; 17-19, ¶¶ 110-119, with State Am. Compl. at 3 ("Facts in Common Cause I, III, IV, V"), 4,

---

[11]  Both Cape and the defendants in the state-court action had an opportunity to present evidence in the state trial court, though that court did not consider the evidence in holding that Cape's claims other than Cause I were moot.  Cape complains that he did not have a "Rule 56 hearing," see Pl. Resp. at 15-16, but an in-court evidentiary hearing is required only when a fact-finder must resolve conflicting evidentiary claims.  That situation does not arise on summary judgment.  Cape does not claim that he could not submit evidence in the state proceedings in the form of affidavits, as the Defendants did.  See Mont. R. Civ. P. 56(c) ("The adverse party prior to the hearing may serve opposing affidavits.").  Nor has Cape suggested in this Court that he actually had evidence to contradict either Warden MacDonald's or Father Pins' affidavit based on the constitutional standards that applied in the state action.  See note 4, supra.  Thus, Cape had a fair opportunity to present his position on the merits in the state action.  See Crossroads Defs.' SUF at 5, ¶¶ 19-20; Mont. Order at 7, ¶ 21; 11, ¶ 30; 12, ¶ 32.

and 6. Because the Montana Supreme Court held that Cape's religious rights were not violated, and because Cape does not allege in this Court any other dietary restriction, the previously-litigated issue extends to Cape's claim that he was forced to choose between eating and adhering to his religious beliefs, see Am. Compl. at 22-23, ¶ 142.

### (ii) Different Issue

Given the parameters of the Montana Supreme Court's decision, Cape's claim under RLUIPA is different than the claims raised in state court. RLUIPA provides:

> "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."

Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2))(brackets omitted).

The "compelling governmental interest" and "least restrictive means" tests supersede the "legitimate penological interest" standard of Turner v. Safley, 482 U.S. 78, 89 (1987), id., making RLUIPA less deferential to prison authorities than a traditional First Amendment analysis.[12] Additionally, Congress provided that,

---

[12] RLUIPA "adopts a protective standard for prisoner religious rights." Kikumura v. Hurley, 242 F.3d 950, 961 (10th Cir. 2001) (referring to RLUIPA as an amendment of the Religious Freedom Restoration Act ("RFRA")) (citing 139 Cong. Rec. S14,465 (daily ed. Oct. 27, 1993) (statement of Sen. Hatch) ("[E]xposure to

under RLUIPA, "[t]he term 'religious exercise' includes *any* exercise of religion, *whether or not* compelled by, or central to, a system of religious belief."   42 U.S.C. § 2000cc-5(7)(A) (emphases added).

The Montana Supreme Court made no decision on the application of RLUIPA. See Mont. Order at 12 n.1. Nor does its ruling on the other claims preclude Cape's litigation of RLUIPA claim here, because the "precise questions" appropriate to constitutional claims are different than the questions that arise as to RLUIPA claims.   The Montana Supreme Court decided only that Cape was provided with meals that met the mandates of the Catholic faith and that his demand for fish was not required by his faith.   See Mont. Order at 12, ¶ 32.   Since those determinations do not preclude relief under RLUIPA, the RLUIPA claim against Aramark is not barred.

### 3. Conclusion

Cape is collaterally estopped from asserting a First Amendment claim against Aramark.  However, collateral estoppel does not apply

---

religion is the best hope we have for rehabilitation of a prisoner. Most prisoners, like it or not, will eventually be returning to our communities. I want to see a prisoner exposed to religion while in prison. We should accommodate efforts to bring religion to prisoners."); id. at S14,466 (statement of Sen. Dole) ("[I]f religion can help just a handful of prison inmates get back on track, then the inconvenience of accommodating their religious beliefs is a very small price to pay."); id. (statement of Sen. Hatfield) ("Mr. Colson's prison ministries group, which has successfully rehabilitated many prisoners, has been denied access to prisoners in Maryland ... who did not identify themselves as [P]rotestants.... [This is an] example[ ] of the need for us to pass this bill without this amendment [which would exclude prisons from RFRA].")

to bar Cape's RLUIPA claim against Aramark.

## V. Failure to State a Claim or Mootness

### A. Suit Against Individuals and Money Damages

Aramark asserts that Cape can make no claim for monetary damages under the RLUIPA. It also claims that RLUIPA does not authorize suits against individuals in their individual capacities but only suits against persons acting in an official capacity.[13] Aramark relies heavily on <u>Boles v. Neet</u>, 402 F. Supp. 2d 1237 (D. Colo. 2005). The Court is more persuaded by the reasoning in <u>Daker v. Ferrero</u>, 2006 WL 346440 (N.D.Ga. 2006), in which, after a lengthy analysis, the court concluded that RLUIPA does allow suits for monetary damages against officials in their individual capacities. Unlike the court in <u>Daker</u>, the <u>Boles</u> court did not consider the statutory definition of "government."

42 U.S.C. § 2000cc-2 provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." The term "government" is defined to include "any ... person acting under color of State law." <u>Id.</u> § 2000cc-5(a)(4)(iii). Section

---

[13]   Defendants also contend that Cape is not "a person residing in or confined to an institution as defined in section 1997 of this title." Defs.' Mem. at 16 (quoting 42 U.S.C. § 2000cc-1(a)). He was at the time of the events alleged in the Amended Complaint. The Court is not aware of any occasion on which an inmate's release moots a claim for money damages. In fact, it is difficult to believe that Congress intended to allow defendants to avoid liability under the RLUIPA simply by transferring or releasing prisoners who file complaints under it. <u>See</u> note 10, <u>supra</u>.

2000cc-5(a) is not cited in Boles, which asserts that RLUIPA permits suit "against a governmental entity, but not against an individual officer, except perhaps in his or her official capacity." Boles, 402 F. Supp. 2d at 1241. An examination of the cases on which Boles relies is instructive. Hale O Kaula Church v. Maui Planning Comm'n, 229 F. Supp. 2d 1056 (D. Haw. 2002), which noted that "RLUIPA provides a cause of action against 'governments' and does not appear to allow causes of action against individuals," id. at 1067, did not consider the statutory definition of "government". Rowe v. Davis, 373 F. Supp. 2d 822, 828 (N.D. Ind. 2005), does not suggest that the plaintiff attempted to proceed against the defendant in his individual capacity or sought money damages, so it is not relevant to the question raised in Boles. Most importantly, Guru Nanak Sikh Soc'y of Yuba City v. Sutter, 326 F. Supp. 2d 1128, 1136 (E.D. Cal. 2003), specifically holds that "[t]he statute's definition of a 'government,' however, makes clear that individual government officials may be subject to suit under RLUIPA." Id. at 1136. And Guru Nanak Sikh Soc'y relied on a Ninth Circuit case – controlling authority - that appears to defeat Aramark's position here. See Kaahumanu v. County of Maui, 315 F.3d 1215, 1219 (9th Cir. 2003) (affirming district court's denial of defendants' motion to dismiss them in their individual capacities under both 42 U.S.C. § 1983 and RLUIPA). The Court concludes that there is no bar to suit against persons acting in their individual

capacities.

Again, to support its argument that money damages are not available, Aramark relies on Boles, which states that "it does not appear that the statute permits a claim for damages." 402 F. Supp. 2d at 1241. The only authority cited in support is Farrow v. Stanley, 2005 WL 2671541 at *11 n.13 (D.N.H. 2005), an unpublished decision that notes, without citation to authority, that "[t]here is substantial uncertainty ... as to whether [RLUIPA] even provides a right to money damages" and declines to address the issue as the parties had not briefed it.

The Tenth Circuit and the Sixth Circuit have suggested that there is a right to monetary damages under RLUIPA – at least, they have not taken opportunities to rule out money damages altogether. See, e.g., Kikumura, 242 F.3d 950, 960 n.5 (rejecting defense argument that RLUIPA could not be applied retroactively by distinguishing between plaintiff's permissible prospective request for injunctive relief and plaintiff's request for money damages); Prater v. City of Burnside, 289 F.3d 417, 433 (6th Cir. 2002) (stating that "[a]pplying RLUIPA in the present case ... does not implicate the general presumption against the retroactive application of statutory law, because the Church is seeking an injunction"). If money damages were never available under RLUIPA, there would have been no need to address the permissibility of retroactively applying the statute. Additionally, in Kaahumanu, a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 22

claim for money damages under both § 1983 and RLUIPA was permitted to go forward. <u>See</u> 315 F.3d at 1219.

Notably, in both <u>Boles</u> and <u>Farrow</u>, the prisoner-plaintiffs were incarcerated in facilities run by the state department of corrections. There is, indeed, substantial uncertainty as to whether RLUIPA provides a right to money damages against a State or against the federal government. A State does not waive its sovereign immunity under the Eleventh Amendment by accepting federal funds, and Congress must make its intention to abrogate the immunity of States that accept such funds "unmistakably clear in the language of the statute." <u>See Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 242 (1985). At the same time, Congress may only waive the federal government's sovereign immunity from damages by an express declaration of their availability. The District of Columbia Circuit has recently held that the Religious Freedom Restoration Act's[14] provision for "appropriate relief" does not amount to a waiver of the federal government's sovereign immunity. <u>See Webman v. Federal Bureau of Prisons</u>, 441 F.3d 1022, 1026 & n.2 (D.C. Cir. 2006) (citing cases).

But none of this means that money damages are not available

---

[14] Although the Supreme Court held RFRA unconstitutional in <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997), it ruled that the statute exceeded Congress' powers under section 5 of the Fourteenth Amendment. RFRA remains in effect for the federal government. <u>See Cutter v. Wilkinson</u>, 544 U.S. 709, 715 n.2 (2005) (citing, <u>inter alia</u>, <u>Guam v. Guerrero</u>, 290 F.3d 1210, 1220-21 (9th Cir. 2002)). Congress responded to the Court's ruling in <u>City of Boerne</u> by invoking its powers under the Commerce and Spending Clauses in RLUIPA.

against private entities that do not have sovereign immunity.  The
Boles and Farrow courts' failure to consider the statutory
definition of "governments" as including persons acting under color
of State law leads logically to their assertion that money damages
are not available; if only governmental entities may be sued under
RLUIPA, then only official-capacity suits are under consideration,
and the Eleventh Amendment generally bars suits for money damages
against state or federal officials acting in their official
capacities.  See, e.g., Will v. Michigan Dep't of State Police, 491
U.S. 58, 71 & n.10 (1989); Edelman v. Jordan, 415 U.S. 651, 667-68
(1974).  The exception to this general rule is that municipalities
may be sued for money damages, see Monell v. Department of Soc.
Servs. of the City of New York, 436 U.S. 658, 690 (1978), but no
municipality was involved in Boles or Farrow.

Contrary to Boles' and Farrow's conclusions, the concurring
judge in Webman pointed out that the term "appropriate relief"
"confers broad discretion on the Court."  Id. at 1026 (Tatel, J.,
concurring) (quoting School Comm. of the Town of Burlington v.
Department of Education, 471 U.S. 359, 369 (1985)).  In fact,
Congress' use of the phrase "appropriate relief," read in the
context of the applicable law on immunity, seems to signal an
awareness that different types of relief would be available against
different types of entities.  The court in Daker, supra, 2006 WL
346440 at ** 8-10, reached a similar conclusion.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 24

Additionally, Congress' reference to a government's discretion to "avoid the preemptive force" of RLUIPA, see 42 U.S.C. § 2000cc-3(e), would be an awkwardly back-handed way of saying that only prospective relief is available. No circuit court of appeals seems to have read the statute in that way. On the contrary, in <u>Civil Liberties for Urban Believers v. City of Chicago</u>, 342 F.3d 752 (7th Cir. 2003), the court held that the plaintiff's request for money damages was mooted by the City's amendment of its zoning ordinance to avoid the preemptive force of RLUIPA's nondiscrimination provisions regarding land use.[15] <u>See</u> <u>id</u>. at 762 & n.6. That is not a decision that rules out money damages per se; it only holds that money damages were not available because the City defendant had taken action under § 2000cc-3(e). It is worth noting that the City of Chicago, like the Defendants in this case, lacks sovereign immunity. At any rate, in Cape's case, Aramark has not claimed that it took corrective action.[16] Therefore, § 2000cc-3(e) is not

---

[15] The nondiscrimination provisions apply only to challenges to land-use regulations. <u>See</u> 42 U.S.C. § 2000cc(b). Section 2000cc-3(e), however, applies to both the land-use provision and the provision regarding institutionalized persons.

[16] As to the Crossroads Defendants, the Montana Supreme Court found that Crossroads "implemented a program in February 2001, where meatless meals are provided to Catholic inmates on Ash Wednesday, Good Friday, and all Fridays during Lent" and that the prison "issued Catholic inmates, including Cape, a card showing that they are entitled to the meatless meals." <u>See</u> Mont. Order at 6, ¶ 18. However, since Cape alleges that he is required to consume fish on every Friday, this finding does not quite dispose of his RLUIPA claim. Evidence of the implementation of this program would be relevant to Cape's RLUIPA claim – particularly whether his religious exercise was "substantially burdened" – but it does not have a preclusive effect. Moreover, as to Aramark, there is no indication in the record that a similar program was implemented at the Great Falls Regional Prison.

applicable to this case.

After considering the arguments of the parties, the Court sees no reason to believe that Cape may proceed only against persons in their official capacities and no reason to believe that his remedies under RLUIPA against Aramark, which lacks sovereign immunity, is limited to prospective relief only. Cape's claim for money damages should not be dismissed.

### B. Declaratory Relief

Because Cape has been released and Aramark is no longer providing food services to him, declaratory relief is no longer available. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor ... afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc). Since Cape and Aramark no longer have a legal relationship, and since any uncertainty as to Aramark's continuing course of conduct was mooted by Cape's release, declaratory relief would not be useful. Circuit law counsels against granting declaratory relief as to "a wholly past violation of federal law." Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992). Cape's request for declaratory judgment should be dismissed.

### C. Injunctive Relief

Cape also lacks standing to obtain injunctive relief. The

standing doctrine arises from the "cases and controversies" requirement of Article III, but, where a request for prospective relief is concerned, it demands that a plaintiff "establish a real and immediate threat" of injury in the future. See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983) (distinguishing between standing to seek damages and standing to obtain injunctive relief). Cape cannot show such a threat here. In order to be detained once again at the Great Falls Regional Prison,[17] he would have to violate the conditions of his release on parole, be sent back to prison by the Parole Board, and be designated by the Department of Corrections for placement at GFRP, rather than one of several other facilities. Those possibilities are far too remote to allow Cape to show a "real and immediate threat" sufficient to support his request for injunctive relief. Cape's request for injunctive relief should be dismissed.

### D. Does Cape's Pleading State a Claim Under RLUIPA?

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii),[18] the Court may dismiss an action at any time if it determines that the plaintiff fails to state a claim on which relief may be granted. The courts must liberally construe pro se pleadings. Balistreri v. Pacifica

---

[17] Aramark no longer provides services at Crossroads.

[18] Cape moved to proceed in forma pauperis on September 30, 2002 (Court's doc. 1). The motion was granted on January 10, 2003 (Court's doc. 4). Accordingly, § 1915 applies.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 27

Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Baker, 859 F.2d

at 127.

> The RLUIPA provides:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to
> an institution, as defined in section 1997 of this title,
> even if the burden results from a rule of general
> applicability, unless the government demonstrates that
> imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental
> interest; and
> (2) is the least restrictive means of furthering that
> compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Cape's claim that he *must* consume fish on

Fridays seems to fit within RLUIPA's extremely broad definition of

"religious exercise": "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief." Id. §

2000cc-5(7)(A). Assuming – as the Court must do, in the absence of

any evidence either way[18] – that Cape is sincere in his contention

that he believes it is necessary for him to consume fish on

Fridays, it is impossible for him to observe that precept if

Defendants do not serve fish on Fridays. A complete preclusion of

---

[18] Aramark argues that "[i]f inquiry can be made into the sincerity of the
person's religiosity, it follows that inquiry can be made into whether the
practice at issue is an exercise of religion." Reply (Court's doc. 129) at 5.
The Court does not see how a distinction can be made between sincerity and
whether a particular practice is an exercise of religion without running afoul
of § 2000cc-5(7)(A)'s prohibition on inquiry into the centrality of a belief
within a particular religious system. Further, there are readily apparent
problems with a court – either through the bench or through a jury – determining
what is legitimately religious and what is not. How, for instance, should a
court determine what is and is not part of a Satanist, Wiccan or Asatru religion?
Cf. Cutter, 544 U.S. at 712-13.

exercise is a "significantly great restriction or onus upon such exercise." Warsoldier, 418 F.3d at 995. See also Civil Liberties for Urban Believers, 342 F.3d at 761 (defining a "substantial burden on religious exercise" as a measure that "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable.").

Additionally, because there is no evidence in the record as to the meals available at the Great Falls Regional Prison, Cape's Amended Complaint must be read as contending that no meatless meals were made available to him on Fridays, on Ash Wednesday, or during Lent at Great Falls Regional Prison, and that this was a policy decision made by Aramark. See, e.g., Am. Compl. at 10-11, ¶¶ 54-56, 58; id. at 15, ¶¶ 96-97.

Finally, Cape alleges that Aramark would not need to make any special purchases or major adjustments to its meal preparations in order to comply with his request. See, e.g., id. at 14, ¶ 83; id. at 15, ¶¶ 90, 92. Compare, e.g., DeHart v. Horn, 390 F.3d 262, 271 (3d Cir. 2004) (applying First Amendment standards to hold that prison was not required to prepare inmate's meals individually in order to accommodate his religiously-based requests for soy products and no "pungent vegetables" such as onion or garlic); Johnson v. Horn, 150 F.3d 276, (3d Cir. 1998) (applying First Amendment standards to hold that prison was not required to provide

hot, rather than only cold, kosher meals to Jewish inmates).[20]  He notes, for example, that fish is on the menu on other days and that vegetarian trays are available to other inmates.

The Court can only conclude that Cape states a claim sufficient to go forward under RLUIPA against Aramark based on its alleged failure to provide meatless meals and/or fish on Fridays and on Ash Wednesday and during Lent.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1.    The Hawke Defendants' motion for summary judgment (doc. 122) should be GRANTED in part and DENIED in part as set forth herein.

2.    All of Cape's claims against Defendants Hawke and Best Foods, Inc., should be DISMISSED WITH PREJUDICE, and Defendants Hawke and Best Foods, Inc., should be DISMISSED.

3.    Cape's First Amendment claim against Defendant Aramark should be DISMISSED WITH PREJUDICE.

4.    Cape's requests for declaratory and injunctive relief should be DISMISSED.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the

---

[20]    Johnson was overruled on one point by an earlier iteration of the DeHart case, DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000), but the parenthetical description of the holding in the text was not affected by the overruling.  See, e.g., DeHart, 390 F.3d at 271.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 30

parties.   The parties are advised that, pursuant to 28 U.S.C. §
636, any objections to these findings must be filed or delivered to
prison authorities for mailing within twenty (20) calendar days
after the entry date reflected on the Notice of Electronic Filing,
or objection is waived.

Cape must immediately notify the Court and counsel for the
Defendants of any change of address.   Failure to do so may result
in dismissal of this case without further notice.

DATED this 18th day of July, 2006.

Carolyn S. Ostby
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 31